TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
Assistant United States Attorney
Asset Forfeiture Section
    United States Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569
    Facsimile: (213) 894-0142
    E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>$611,020.20 SEIZED FROM ONE BANK OF AMERICA ACCOUNT,<br><br>        Defendant. | Case No. 2:22-CV-03254<br><br>COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. §§ 981(a)(1)(A) & (C) and 984<br><br>[HSI] |

Plaintiff United States of America brings this claim against defendant $611,020.20 Seized From One Bank Of America Account, and alleges as follows:

### JURISDICTION AND VENUE

1. The government brings this in rem forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C) and 984.

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $611,020.20 Seized From One Bank of America Account (the "defendant bank funds") seized pursuant to a federal seizure warrant on or around March 2, 2021 at Bank of America ("BofA"), P.O. Box 15047, Wilmington, Delaware 19850-5047, from an account at BofA in the name of Green Saga LLC with the last four digits ending in 8089 and over which Armen Hakobyan ("Hakobyan") and Abraham Akhoian ("Akhoian") have signature authority.

6. The defendant bank funds are currently in the custody of the United States Customs and Border Protection, Department of Homeland Security in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Green Saga LLC and BofA may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

Background Of Hakobyan's Fraud Scheme

8. In or around July 2020, Hakobyan submitted an application on behalf of his company Green Saga LLC to receive approximately $1,086,252.00 in funds with the Small Business Administration ("SBA") and through the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") established by the Coronavirus Aid, Relief, and Economic Security Act. On or about July 22, 2020, a business account was opened at a Sylmar, California BofA branch in

the name of Green Saga LLC ("Green Saga LLC Account") and with Akhoian and Hakobyan having signature authority over the account. The $1,086,252.00 in PPP funds were disbursed into the Green Saga LLC Account, with BofA funding the PPP loan and disburding $936,352.00 into the account on or about July 27, 2020, followed by a disbursement of $149,900.00 on or about July 28, 2020 from the SBA.

9. Once the Green Saga LLC Account was funded, at least ten checks totaling approximately $488,853.00 were drawn on the account and payable to a mix of business names and individual names in a manner consistent with money laundering.

10. In the loan application for the funds that resulted in BofA funding the loan, Hakobyan made a series of false representations about Green Saga LLC and himself, including that Green Saga LLC was a plumbing company which reported a monthly average payroll expense of $374,541.00, had a total of 85 employees, and had been in operation since February 15, 2020 (the cutoff date to obtain SBA funds). The application listed Hakobyan as the principal of Green Saga LLC. In fact, Green Saga LLC had no employees, was never operational, and Akhoian sold Green Saga LLC to Hakobyan on or around August 4, 2020, despite what was purported in the loan application. Further, Hakobyan is an Armenian national who travelled to the United States on a tourist visa and lied about being a United States citizen to fraudulently obtain relief funds for Green Saga LLC.

<u>Description Of The Paycheck Protection Program</u>

11. The Coronavirus Aid, Relief, and Economic Security Act, which is also known as the CARES Act, is a federal law enacted around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects

caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  Around April 2020, Congress authorized over $300 billion in additional PPP funding.

12.  In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business, through its authorized representative, to acknowledge the Program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification requires the applicant, through its authorized representative, to affirm that:

> [t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

13.  In addition, the business, through its authorized representative, must state, among other things, the company's number of employees and average monthly payroll expenses, and provide documentation showing the company's payroll expenses.  The employee and payroll expense numbers are used to calculate the amount of money the business is eligible to receive under the PPP.

14.  In the first instance, the company's PPP loan application is received and processed by a participating financial institution, and then the application is transmitted to the Small Business

Administration ("SBA") for further review and assessment of the applicant's eligibility. If a PPP loan application is approved, the participating financial institution funds the PPP loan using the financial institution's own monies.

15. PPP loan proceeds must be used by the business on certain permissible expenses, namely payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75% of the PPP loan proceeds on payroll expenses.

<u>Hakobyan's Submission Of A Loan Application Seeking a PPP and EIDL Loan For His Company Green Saga LLC</u>

16. In or around July 2020, Hakobyan submitted, on behalf of Green Saga LLC, an application for a PPP and EIDL Loan. Hakobyan's loan application contained the information set forth below.

17. The PPP loan application for Green Saga LLC was signed by Hakobyan and claimed that Green Saga LLC was a plumbing company which reported an average monthly payroll expense of $374,541 and a total of 85 employees. The application listed Hakobyan as the principal of this company and reported that Green Saga LLC had been in operation since before February 15, 2020, the cutoff date to obtain SBA relief funds. The loan application also listed the address for Green Saga LLC as an apartment unit in Santa Clarita, California that, according to government records, is Hakobyan's residence address. In addition, the loan application was submitted with a Internal Revenue Service ("IRS") tax form as proof of the company's existence, namely IRS Form 941 for 2020 - Employer's Quarterly Federal Tax dated on April 28,

2020, and purported to show that Green Saga LLC's wages and taxes for the first quarter of tax year 2020 were $1,123,622.98 and the company had 85 employees. The IRS tax form submitted to BofA was signed by Hakobyan as the president of Green Saga LLC. The representations in the loan application were false.

18. Additionally, Hakobyan also falsely claimed, in the loan application, to be a United States Citizen, which is one of the eligibility questions asked by the SBA to determine whether the applicant is entitled to any economic assistance. Hakobyan is an Armenian national who was last admitted into the United States on or around June 20, 2016 as a tourist with a B-2 non-immigrant visa with an expiration date of March 3, 2026. Hakobyan remained in the United States for approximately 4 years until he left the United States on or around October 23, 2020 for Armenia. Hakobyan is not a United States citizen or legal permanent resident, and therefore is not entitled to any disaster relief assistance from the SBA.

<u>The False Loan Application And BofA's Funding Of The Loan</u>.

19. As mentioned above, on or around July 27, 2020, BofA funded the $1,086,252.00 PPP loan, disbursing $936,352 into the Green Saga LLC Account, followed by a second disbursement of $149,900.00 on or July 28, 2020 from the SBA. A large portion of the funds were then rapidly removed from the account, mostly by large checks to other purported businesses. The withdrawals by check began on July 28, 2020--the day of the SBA disbursement--and continued for about a week, until the account was frozen, resulting in the removal of hundreds of thousands of dollars from the Green Saga LLC Account. Instead of those removed funds being used for payroll, as PPP loan funds must, the checks mostly went to purported businesses such as

Basilica Management Inc., United Electric Wholesale & Trading, Innercot Inc., B&B Farms Enterprises Inc., Verona Central Inc. and Celebrity Styles & Events.

20. Surveillance footage reflects that Hakobyan withdrew $168,955.00 via a cashier's check from the Green Saga LLC Account on or around July 30, 2020 (i.e., within days after BofA funded the loan), at a Beverly Hills, California.

21. On or about January 4, 2021, officers found a Yelp page for Green Saga LLC that contained minimal information and one review left by "Arman A." (Armen is Hakobyan's first name), which provided the following: "Love the way they work. Juan is the best. I called them at 2 am. They came in 20 minutes, fix my toilet. They saved my life. Thank you, Green Saga team." Linked to the Yelp profile was a website with URL https://greensagallc.com/ which led to a single webpage with very limited information about the plumbing services allegedly offered by Green Saga LLC and which prompted potential customers to call a particular telephone number 24/7 to schedule an appointment. On or about February 8, 2021, officers called the telephone number multiple times but each time the call went to a voicemail.

22. On or about February 28, 2021, officers located three articles of incorporation with the name Green Saga LLC. The oldest two of the three articles of incorporated was dated in 2018, listed Green Saga LLC as a cultivation farming business, and identified Abraham Akhoian as the sole owner and president of the company. The most recent article of incorporation was dated August 4, 2020, reflected a change of ownership of the company to Hakobyan, and modified the type of entity description to "general service business"

with an address in Santa Clarita, California.  Hakobyan reported that same Santa Clarita address to Immigration authorities as his residence address.

23.  The California Employment Development Department ("EDD") is responsible for tracking wages in California.  Because Green Saga LLC claimed in its loan application to have 85 employees who purportedly had wages totaling $374,541 per month on average, there should have been many records of wages paid by Green Saga LLC if its loan application was correct.  On or about February 8, 2021, officers spoke to an EDD Criminal Investigator regarding records of Green Saga LLC operating in the state of California under that name, or under the EIN set forth in the loan application.  However, EDD records did not reflect the reporting by Green Saga LLC.

<u>In a Ruse Call to Akhoian, Akhoian Denied that Green Saga LLC Was Operational Before He Sold it to Hakobyan</u>.

24.  On or about January 15, 2021, officers conducted an undercover telephone call to the telephone number Akhoian provided to BofA for the Green Saga LLC Account.  In that undercover capacity, officers purported to be seeking additional information on behalf of the SBA and BofA, in order to release the freeze that had been placed on the Green Saga LLC Account.  During the conversation, Akhoian provided the following information.

25.  The individual who answered the telephone identified himself as Akhoian and explained that he used to be the owner of Green Saga LLC but sold the business on August 4, 2020 to Hakobyan. Akhoian explained that the company was fully transferred to Hakobyan, including the ownership of the Green Saga LLC Account. Akhoian also stated that Green Saga LLC was never operational while

8

1  he was the sole owner of the business and that Green Saga LLC was
2  started with the idea of becoming a plumbing service, but that he
3  was unable to fully start due to COVID-19.  Akhoian stated that, for
4  this reason, he decided to sell and transfer the title of the
5  company to Hakobyan.  Akhoian further stated that he was aware that
6  Hakobyan had applied for a PPP loan in the name of Green Saga LLC
7  but was not familiar with the details or the process.

<u>In a Ruse Call to Hakobyan, Hakobyan Falsely Claimed He Was A United States Citizen Living in Santa Clarita And Green Saga LLC Was a Successful Landscaping Firm</u>.

11      26.  On or about January 28, 2021, officers conducted an
12 undercover telephone call to the telephone number Hakobyan had
13 provided to BofA for the Green Saga LLC Account.  In that undercover
14 capacity, officers purported to be seeking additional information on
15 behalf of the SBA and BofA, in order to release the freeze that had
16 been placed on the Green Saga LLC Account.  During the conversation,
17 Hakobyan provided the following information.

18      27.  The individual on the telephone identified himself as
19 Hakobyan and stated that he was unable to respond sooner due to a
20 recent exposure to COVID-19.  Hakobyan went over some of the
21 information initially submitted to BofA stating that:  Green Saga LLC
22 was first established in 2018; Green Saga LLC was a landscaping and
23 construction business that employed 85 employees (not a plumbing
24 business as described in the loan application); Hakobyan was the sole
25 owner of the business; and that the annual revenue for year 2019
26 amounted to $4.4 million.

27      28.  The officer explained to Hakobyan that one of the
28 requirements for disaster relief funds was to be either a United

States citizen or a United States Legal Permanent Resident and asked Hakobyan his citizenship. Hakobyan answered that he was a United States citizen. As set forth above, however, Hakobyan was an Armenian national on a B-2 tourist visa.

29. The officer asked Hakobyan to meet with the officer at a BofA branch of his choice to confirm his identity, but Hakobyan stated he would be unable to do so because he was still positive for COVID-19. When asked if Hakobyan was currently residing in Santa Clarita, California, and Hakobyan replied that he was, even though travel records show that Hakobyan had not returned to the United States since October 23, 2020.

30. On or around January 29, 2021, Hakobyan called the officer to ask whether there would be any other way to verify his identity other than meeting in person. The officer explained to Hakobyan that unfortunately that would not be an option and that they could meet in person at his convenience once he felt better. Notwitstanding this conversation and information from the officer acting in an undercover capacity, a few days later, on or around February 3, 2021, Hakobyan called BofA and demanded the release of the funds, falsely stating that he had verified the legitimacy of the funds and his identity with the SBA.

## FIRST CLAIM FOR RELIEF

31. Plaintiff incorporates the allegations of paragraphs 1–30 above as though fully set forth herein.

32. Based on the above, plaintiff United States of America alleges that the defendant bank funds constitute or are derived from proceeds traceable to, or a conspiracy to commit violations of 18 U.S.C. §§ 1014 (loan fraud), 1343 (wire fraud) and/or 1344 (bank

fraud), each of which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

SECOND CLAIM FOR RELIEF

33. Plaintiff incorporates the allegations of paragraphs 1-30 above as though fully set forth herein.

34. Based on the above, plaintiff alleges that the defendant bank funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1014 (loan fraud), 1343 (wire fraud) and/or 1344 (bank fraud). The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

/ / /

THIRD CLAIM FOR RELIEF

35.  Plaintiff incorporates the allegations of paragraphs 1-50 above as though fully set forth herein.

36.  Based on the above, plaintiff alleges that the defendant bank funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1014 (loan fraud), 1343 (wire fraud) and/or 1344 (bank fraud).  The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendant bank funds;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  that this Court decree forfeiture of the defendant bank funds to the United States of America for disposition according to law; and

/ / /

/ / /

/ / /

  (d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: May 12, 2022    TRACY L. WILKISON
               United States Attorney
               SCOTT M. GARRINGER
               Assistant United states Attorney
               Chief, Criminal Division
               JONATHAN GALATZAN
               Assistant United States Attorney
               Chief, Asset Forfeiture Section


               /s/ Victor A. Rodgers
               VICTOR A. RODGERS
               Assistant United States Attorney
               Asset Forfeiture Section

               Attorneys for Plaintiff
               UNITED STATES OF AMERICA

VERIFICATION

I, Alfredo Rossi, hereby declare that:

1. I am a Special Agent with the Homeland Security Investigations ("HSI").

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May _2_, 2022 at Los Angeles, California.

*Alfredo Rossi*
ALFREDO ROSSI